**STATE of Utah, Plaintiff, Appellant, and Respondent,**

v.

**ONE 1979 PONTIAC TRANS AM (Wayne T. Hall), Defendant, Respondent, and Appellant.**

**No. 880188–CA.**

Court of Appeals of Utah.

March 15, 1989.

---

Willard R. Bishop, Bishop & Ronnow, Cedar City, for defendant, respondent and appellant Wayne T. Hall.

Scott M. Burns, Iron County Atty., and Keith F. Oehler, Chief Deputy Iron County Atty., Cedar City, for respondent Iron County.

David L. Wilkinson and Creighton C. Horton, II, Asst. Atty. Gen., Salt Lake City, for plaintiff, appellant and respondent State of Utah.

Before BENCH, BILLINGS and GREENWOOD, JJ.

## OPINION

BILLINGS, Judge:

Defendant Wayne T. Hall appeals the forfeiture of his 1979 Pontiac Trans Am ("Trans Am") pursuant to Utah Code Ann. § 58-37-13 (1988). The trial court awarded the vehicle to the State of Utah subject to the uncontested lien of State Bank of Southern Utah ("the bank") and the disputed interest of Fred and Bertha Laurito ("the Lauritos"). Hall claims the trial court should have ordered the vehicle sold and the proceeds apportioned between the bank and the Lauritos with the remaining interest forfeited to the State. The State appeals arguing that its interest in the Trans Am should not be subject to the Lauritos' interest in the vehicle.[1] We affirm.

## FACTS

On September 11, 1987, the State seized the Trans Am following the arrest of its owner and driver, Hall, for possession of cocaine with intent to distribute. The State filed a petition for forfeiture of the Trans Am and a hearing was held on November 2, 1987. Although Hall had notice of and was present at the forfeiture hearing, he failed to answer the forfeiture petition, and accordingly, the trial court entered his default at the hearing.

The bank's perfected security interest in the Trans Am was not contested below nor is it an issue on appeal. However, the State claims the Lauritos have no legal interest in the Trans Am. The Lauritos, Hall's grandparents, loaned Hall money to purchase the Trans Am and a balance of $3,883 remained due on the loan at the time

1. Originally, the State and Hall filed separate appeals. The case was consolidated by stipula- tion of the parties.

of the forfeiture hearing. The Lauritos produced a document evidencing their loan at trial. The trial court found the Lauritos trusted Hall, expected him to repay the loan, and honestly believed they had a lien against the Trans Am to secure their loan. The trial court concluded that even though the Lauritos did not have a perfected security interest in the Trans Am, it would be unconscionable to forfeit their interest in the vehicle. Accordingly, the trial court ordered the Trans Am forfeited to the State pursuant to Utah Code Ann. § 58–37–13 (1988), subject to the perfected security interest of the bank and the Lauritos' $3,883 interest.

Two issues are presented on appeal. First, Hall claims the Trans Am should have been sold pursuant to Utah Code Ann. § 58–37–13(9)(j) (1988), rather than forfeited to the State under § 58–37–13(8)(a). Second, the State claims the trial court incorrectly held the State's interest was subject to the Lauritos' unperfected security interest in the Trans Am.

### FORFEITURE

■ We first address Hall's claim that the Trans Am was forfeited under the wrong statutory provision. It is well settled that matters not presented to the trial court may not be raised for the first time on appeal. *See, e.g., James v. Preston,* 746 P.2d 799, 801 (Utah Ct.App.1987). A matter is sufficiently raised if it is submitted to the trial court, and the court is afforded an opportunity to rule on the issue. *Id. See also Franklin Fin. v. New Empire Dev. Co.,* 659 P.2d 1040, 1045 (Utah 1983); *State v. Aase,* 762 P.2d 1113, 1117 (Utah Ct.App. 1988). Since Hall failed to answer the forfeiture petition and did not voice any objection below to the forfeiture procedure used by the trial court, we will not consider his argument for the first time on appeal.

### "BONA FIDE" SECURITY INTEREST

We next address the State's argument that the trial court erred in holding the State's interest in the Trans Am was subject to the Lauritos' interest. Whether an unperfected security interest is protected under Utah's criminal forfeiture statute is an issue of law, and thus, we accord no particular deference to the trial court's conclusion, but review it for correctness. *See, e.g., Scharf v. BMG Corp.,* 700 P.2d 1068, 1070 (Utah 1985); *Stewart v. Coffman,* 748 P.2d 579, 580–81 (Utah Ct.App.1988). The trial court held "it would be unconscionable to allow a forfeiture of [the Trans Am] to defeat the claim of the [Lauritos]." [2] We do not agree the concept of unconscionability provides a proper legal basis for the trial court's decision. However, we will affirm if there is any proper legal basis supporting the decision "despite the trial court's having assigned another reason for its ruling." *Buehner Block Co. v. UWC Assocs.,* 752 P.2d 892, 895 (Utah 1988).

In this regard we turn to Utah Code Ann. § 58–37–13(1)(e)(iii) (1988) which provides, with our emphasis:

(1) The following are subject to forfeiture, and no property right exists in them:

. . . . .

(e) all conveyances including aircraft, vehicles, or vessels used or intended for use, to transport, or in any manner facilitate the transportation, sale, receipt, simple possession, or concealment of [controlled substances], except that:

. . . . .

(iii) any forfeiture of a conveyance subject to a *bona fide security interest* is subject to the interest of a secured party who could not have known in the exercise of reasonable diligence that a violation would or did take place in the use of the conveyance. . . .

---

2. The Lauritos cite two cases to support the trial court's finding of unconscionability. *See Soffe v. Ridd,* 659 P.2d 1082, 1084 (Utah 1983); *Perkins v. Spencer,* 121 Utah 468, 243 P.2d 446, 450 (1952). However, these cases deal with unconscionability in the context of liquidated damage provisions of real estate contracts and are not helpful in determining whether the Lauritos had a property interest protected under Utah Code Ann. § 58–37–13 (1988).

The narrow question we must decide is whether an unperfected security interest constitutes a "bona fide" security interest under Utah's forfeiture statute. This issue is one of first impression in Utah.

Under rules of statutory construction, words should be interpreted according to their plain meaning unless something in the character of the legislation justifies a different interpretation. *In re M.L.T.*, 746 P.2d 1179, 1180 (Utah Ct.App.1987). There is nothing in the context of § 58–37–13 suggesting the Legislature intended "bona fide" to be interpreted other than according to its plain meaning, and we, therefore, reject the State's argument that the forfeiture statute should be interpreted as recognizing only perfected security interests as "bona fide." The Utah Legislature did not specify that a security interest must be perfected before it is protected under the criminal forfeiture statute, rather the Legislature merely stated it must be "bona fide."

■■■ To ascertain the plain meaning of the term "bona fide" we turn to *Webster's Third New Int'l Dictionary*, 250 (1986), wherein "bona fide" is defined as being "made in good faith without fraud or deceit.…" Similarly, *Black's Law Dictionary* 160 (5th ed. 1979), defines "bona fide" as "in or with good faith; honestly, openly, and sincerely; without deceit or fraud." Accordingly, we hold that to establish a security interest is "bona fide" under the forfeiture statute, one must only establish an actual, good faith interest in the property not derived by fraud or deceit. Under this definition, the Lauritos have a bona fide security interest in Hall's Trans Am. The Lauritos loaned Hall money towards the purchase and repair of the Trans Am and a balance of $3,883 remained due on this loan. The Lauritos believed in good faith that Hall would repay the loan and that they had a lien against the Trans Am to secure their loan. Finally, the State does not claim the Lauritos knew of Hall's illegal use of the Trans Am to transport drugs. Based on the foregoing, we conclude the Lauritos had a bona fide security interest within the meaning of § 58–37–13.

■ Our conclusion is consonant with other jurisdictions that have interpreted similar criminal forfeiture statutes as not requiring a security interest to be perfected to qualify as "bona fide." In *MBank Grand Prairie v. State*, 737 S.W.2d 424, 426 (Tex.Ct.App.1987), the Texas court held that an unperfected security interest was valid in a Texas forfeiture proceeding, stating:

On the issue of perfection of the security interest, we do not find where an interest must be perfected to be "bona fide" under [provisions] of the Controlled Substances Act. Secured creditors should not be required to compete with the State for priority. The State's interest arises by operation of law. The State does not and should not stand in the shoes of a good faith purchaser or a creditor who has given value.

An unperfected security interest is subordinated under [the Texas Commercial Code] to five classes of creditors. The State does not fall within any one of these classes outright, nor does the Controlled Substances Act elevate the State to a class within [these provisions].

*Id.* at 426 (citation omitted).

Similar to the Texas statutory scheme discussed in *MBank*, Utah Code Ann. § 70A–9–301 (1980) lists four classes of creditors having priority over an unperfected security interest. The State does not fall within any of these classes, and thus, is not given statutory superiority over an unperfected security interest. As in *MBank*, "[w]e do not agree that only perfected liens are 'bona fide' under … [Utah's forfeiture statute].… If that was the Legislature's intent then the statute would so reflect." *MBank*, 737 S.W.2d at 427.

Our interpretation of the statutory language comports with the purpose of forfeiture statutes in general.

[T]he primary purpose is "not to vest in the [State] an equitable interest in the property or the proceeds of its sale, but is to prevent further unlawful use of the property by depriving the guilty party of

additional opportunity to so misuse it," and the state accordingly loses none of its rights when the property is seized, sold, and the proceeds paid to any innocent party who can prove a bona fide interest therein.

*Farmers & Merchants Bank of Trenton v. State,* 167 Ga.App. 77, 306 S.E.2d 11, 13 (1983) (quoting *Hallman v. State,* 141 Ga. App. 527, 233 S.E.2d 839, 840 (1977)). *See also State v. Fouse,* 120 Wis.2d 471, 355 N.W.2d 366, 370 (Ct.App.1984).[3]

Even where a forfeiture statute expressly required that a security interest be perfected before it was exempted, the Wisconsin Court of Appeals held that although the holder of an unperfected interest could not prevent the forfeiture, the holder was still entitled to compensation for his or her interest in the forfeited vehicle after the forfeiture had occurred. *State v. Fouse,* 120 Wis.2d 471, 355 N.W.2d 366, 370 (Ct. App.1984).[4]

Based on the foregoing, we find the Lauritos had a bona fide security interest under § 58–37–13. Accordingly, we affirm the trial court's award of the Trans Am to the State subject to the Lauritos' interest.

BENCH and GREENWOOD, JJ., concur.

---

3. Some courts have expressed a concern that allowing parties with unperfected security interests to maintain an interest in property subject to forfeiture will lead to fraudulent claims. We agree with the Alaska Supreme Court which observed that "the holder of an allegedly unperfected security interest must prove to the court that he or she has such an interest.... Placing the burden on the party asserting the interest to demonstrate the existence of a security interest will reduce the possibility of fraud." *Fehir v. State,* 755 P.2d 1107, 1110 (Alaska 1988).

4. Cases holding that a security interest must be perfected before the holder's interest will be recognized under a criminal forfeiture statute all rely on statutory language which expressly requires perfection. *See United States v. One 1951 Douglas DC-6 Aircraft,* 525 F.Supp. 13, 15–16 (D.Tenn.1979), *aff'd,* 667 F.2d 502 (6th Cir.1981), *cert. denied,* 462 U.S. 1105, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1982) (unsecured interest of intervenor must yield to that of government because statute provided that "no interest in an aircraft is valid against anyone other than the conveyor of the interest until the holder records it with the FAA"); *In re Forfeiture of One 1979 Chevrolet C10 Van,* 490 So.2d 240, 241 (Fla.Ct.App.1986) (court based its finding on statute specifically requiring that lien be perfected in manner prescribed by law); *State v. One Certain Conveyance 1978 Dodge Magnum,* 334 N.W.2d 724, 728 (Iowa 1983) (claimant's lien must be "of record" at time of seizure in order to be deemed superior to State's interest upon forfeiture; statute provided that only lienholders of record are entitled to receive notice of a forfeiture hearing).